Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is open according to law. God save the United States and his Honorable Court. Thank you, Ms. Jettis. This is Beverly Martin and I'd like to welcome everyone. We had hoped to be together in person, obviously, but here we are. Judge Rosenbaum and I are especially grateful to Judge Tallman for being with us. Judge Tallman and I crossed paths as new judges. We've been on the federal bench in the same year and so we had really looked forward to being together in person to catch up, Judge Tallman, and I'm sorry it was not meant to be, but we appreciate you being with us. In any event, we appreciate you getting up early in Idaho to be with us. Well, it's my pleasure and it's nice to be working with you finally. I agree. I agree. And, Judge Rosenbaum, it's always a pleasure to be with you. So, we will get underway. Ms. Jettis has gotten really good at this. She will notify you of, what is it, Valerie, when they have two minutes left? Is that what you do? Two-minute warning and when their argument has expired. I will say, counsel, your argument has expired. That's the red light. Thank you, Ms. Jettis. So, I think with that, and I'm going to try to enforce the time limits, but with that, I think we're ready for the first case, which is the United States of America v. Juan Carlos Osorto. Counsel? Good morning, Your Honors. This is Lynn Bailey on behalf of Juan Carlos Osorto. May it please the Court and counsel. Sentencing Guideline 2L1.2 violates the Equal Protection Principles and the Due Process Clause of the Fifth Amendment by impermissibly discriminating against aliens. The Sentencing Commission promulgated and amended 2L1.2, but the Sentencing Commission does not enjoy a presumption that any classification it draws based on alienage serves an overriding national interest in immigration and naturalization. Counsel? Yes, Your Honor. Counsel, this is Robin Rosenbaum. I'm sorry to interrupt, but let me ask you, the way I see this, there are really two different issues. One is dealing with the pre-reentry convictions, and the other is dealing with the post-reentry convictions, and I'm not sure that the same rule necessarily applies to both. Why are we not bound by that with respect to the pre-reentry enhancements? Yes, Your Honor, that's a good question, and I do think that the case of Adelecki does bind this Court as to the pre-reentry convictions because the guideline was similar back in 1992 when Adelecki was decided. And to that extent, we would ask this Court to consider the pre-reentry convictions en banc. But as far as the post-reentry convictions are concerned, that was added to the guideline in 2016, and so the facts and circumstances are different from what was decided in Adelecki. And so I don't think this Court is bound by Adelecki when it comes to the post-reentry convictions, and neither do I think that this Court should extend the reasoning of Adelecki to the post-reentry prior convictions. Ms. Bailey, Judge Tallman, why not? If Adelecki applied the Matthews v. Diaz standard of review to pre-entry, pre-reentry convictions, why shouldn't that same standard of review apply to an equal protection claim to post-reentry criminal conduct? There are several reasons for that, Your Honor. First, we rely on Hampton v. Malson-Wong, which the Adelecki Court did not cite and did not address. Respectfully, we submit that the Adelecki Court decided that case wrongly because it did not account for Hampton v. Malson-Wong. Hampton tells us that when it's not Congress making the decision and when it's not the President making the decision, that we cannot rely on a blanket overriding national interest in immigration and naturalization in order to justify any discrimination against aliens. Here we have the Sentencing Commission making the decision. The Sentencing Commission is an independent rulemaking body. It's located in the judicial branch, which when you look at the similarities between the Sentencing Commission and the Civil Service Commission in the Hampton case, there are a lot of similarities. Because it's in the judicial branch, that's even one more reason not to give it the deference in this area of discriminating against aliens. After the Supreme Court upheld the constitutionality of the delegation of Congressional authority to the Sentencing Commission, why doesn't the Commission have the authority to make uniform sentences that are imposed upon illegal aliens who continue to commit criminal offenses? Yes, Your Honor. I believe you're referring to the Mestreda case. I am. The court did uphold the delegation. However, again, if we look at the Hampton case, in that case too, the Civil Service Commission regulations that it promulgated, the court looked at whether Congress and the President had acquiesced in those because they had been around for almost 100 years. And they looked at whether the acquiescence could be considered an explicit directive. And they rejected it. And here, I would submit that we have a very similar situation. But the court in the Civil Service case talked about the fact that there was a misjoinder of responsibility for immigration policy enforcement and administrative regulation of the Federal Civil Service rules. Here, we have a specific entity that Congress has created in order to assess the uniformity of sentencing. And the Supreme Court has upheld that delegation. So, it seems to me that the Civil Service case is distinguishable from the Sentencing Commission's responsibilities. Yes. And the Sentencing Commission responsibilities are – they have – their primary responsibility is to promulgate guidelines that do need to achieve uniformity. But their guidelines need to satisfy the purposes in 3553A2, which includes deterrence, just punishment, and the other factors listed in 3553A2. Why couldn't the Commission seek to deter criminal aliens who've previously been convicted of crimes before they're removed and try to deter them from committing crimes again after they illegally re-enter? That seems to me to be a pretty rational extension of Adeliki and well within the authority of the Sentencing Commission that the Supreme Court approved in Mastretta. Yes. I do think that the Sentencing Commission is tasked with providing adequate deterrence of criminal conduct. In Adeliki, they – the court focused on deterrence to re-entry, which there's a very subtle – there's a subtle distinction there, but one that's important because deterring someone from re-entry encroaches upon Congress and the President's power in immigration and naturalization. Deterring from re-entry is determining who we're letting in and who we're not letting in, and I don't think that is within the scope of the Sentencing Commission's duties and responsibilities. Well, you're not challenging the Commission's responsibility to provide guidelines for simple re-entry cases. Forget about criminal records. Just talk about a criminal illegal entry into the United States. You're not challenging the Commission's authority to promulgate guidelines for that crime, are you? No, sir. We're not challenging that. We're challenging the duplicative use of the criminal conviction in a way against aliens that is not present with other citizens because it – those counts against them on the criminal history in Chapter 4 as well as in the offense conduct in Chapter 2. So what we submit is that the court should – should not follow Etalaki, but rather should follow the framework in the Hampton case to determine whether the Sentencing Commission has any reason to enhance the offense level for conviction subsequent to removal or the post-removal conviction. And we submit that they don't and that it violates equal protection principles. Hampton tells us we cannot accept discrimination against aliens based on this blanket overriding national interest. And to pass constitutional muster, the guideline needs to either be explicitly determined by Congress or justified by reasons that were properly the concern of the Sentencing Commission. And here it's neither. I guess I still don't understand your position. If you concede that the Commission has the authority to deter the initial illegal reentry, why doesn't it have the authority to deter aliens who, in addition to illegally reentering, continue to commit crimes in the United States? It seems to me that that should be punished more severely, should it not? And that's clearly a rational basis under Matthews. Well, I think we concede that the Commission has the authority to promulgate a guideline for the – to punish the reentry because that is the crime prescribed in 1325A. I'll put two minute warning. Thank you. Ms. Bailey, this is Beverly Martin. I'm assuming we got to the merits of the guideline, the 2B3, I'll say for shorthand. It didn't look like to me that the government articulated a rational basis for discriminating against – on the basis of alienage. Did you see where they did, and if so, what was your – what is your response? Your Honor, I did not see where the government articulated any rational basis. And what I saw in the government's briefing was that they solely relied on the Adelecki case and the binding nature of the Adelecki case. To the extent Adelecki looked at the reason, I think they only looked at the – they presumed that the Sentencing Commission may have concluded that Congress wanted to punish – or wanted to deter aliens with felony convictions from reentering, and they relied on 1326. And that cannot serve as a rational basis for the discrimination with the post-reentry convictions because 1326 has nothing to do or nothing to say about post-reentry convictions. I also think it's a stretch to rely on 1326 as saying that it shows that Congress intended to deter these aliens because – Your Honor, I see my time is up. Thank you. We'll give you your time on rebuttal. And Mr. Schull, before you start, I already realize I've fallen down on my job. I think we promised – Ms. Geddes can confirm this – I think we promised the advocates two minutes of uninterrupted time to begin. Is that right, Ms. Geddes? Yes. Okay. So I forgot to protect you in that regard, Ms. Bailey. If you want an extra minute on rebuttal, I'll give you that so you can get through your two minutes without interruption. But I realize maybe it's not true that it's better late than never, but it's kind of the best I can do. And Mr. Schull, we will give you two minutes of uninterrupted argument. Thank you, Your Honor. Peter Schull on behalf of the United States. Picking up on, I think, the way that the panel began the discussion, under the prior precedent rule, a delegate foreclosed the equal protection and the double-counting arguments regarding the in-sentence enhancement based on the pre-deportation convictions. It also foreclosed any argument that a heightened standard of review applies to the equal protection claim. Although 2L1.2 at issue here was not the same version that was at issue in Adelike, Adelike's reasoning certainly demonstrates that Osorto's claims regarding the post-deportation conviction fail for the same reasons as his claims regarding the pre-deportation conviction. Now, Ms. Bailey, in her brief and here this morning, attempts to distinguish Adelike on the ground that it did not address the current version, which applies to both pre- and post-deportation claims. Although the guideline is different, it's still governed by the same holding and reasoning. For equal protection purposes, it's still entirely rational to deter an illegal reentry defendant from reentering by enhancing his sentence based on crimes that he committed before and after the deportation. The timing of the crimes really has no bearing on the equal protection analysis. The current version of 2L1.2 certainly still fits squarely within the holding and reasoning of Adelike. A couple of your honors raised questions about, and Ms. Bailey raised a question about whether there's a rational basis for the current version of 2L1.2, which again, unlike the version at issue in Adelike, applies to both pre- and post-deportation crimes. Part of that argument is based in part on the fact that the illegal reentry statute 1326 prescribes enhanced statutory penalties, but only for pre-deportation convictions. The Sentencing Commission's authority to adopt Section 2L1.2 is not defined solely by the illegal reentry statute. It's defined much more broadly by Sections 991, 994, and 995, in which Congress explicitly directed the Commission to adopt federal sentencing guidelines based on a variety of factors, including aggravating circumstances regarding the offense and all of the sentencing factors in 3553A2. Our sortorist case doesn't involve just illegal aliens in general. It doesn't involve aliens who have permission to be here, or even just a garden variety undocumented aliens. It involves illegal aliens who returned to the United States after having been deported and who committed crimes before or after the deportations. And sound policy, which is grounded in 3553A, dictates that the sentences of those offenders should be enhanced in order to deter them from returning to the United States again in the future. For example, if an illegal alien who committed a crime before being deported deserves an enhanced sentence, and I think he clearly would, then it's certainly reasonable to conclude that he should receive another enhancement if he returns to the United States again and commits another crime after having been deported. This is Beverly Martin. I mean, more to the point, I haven't heard you really drill down on what is the rational basis for distinguishing between noncitizens and citizens. Can you drill down on that? Yes, yes. Well, I mean, the citizenship and alienage of an illegal reentry defendant is inherent in the offense itself, so that when one looks at the policy of deterrence, which is distinct, I think, from the general recidivism concern that applies both to citizens and noncitizens, the alienage of the defendant and the nature of the offense itself focuses on the illegal status of the person entering the country and being present in the country illegally. That really goes to the point I'm trying to make. I mean, they're already being punished for that, but in terms of this extra punishment for a post-reentry crime committed, I'm just trying to hear from you what's the rational basis for punishing a noncitizen more. Well, I think that's something that was directly addressed by the Commission when it adopted Amendment 802. That amendment adjusted certain enhancements for pre-deportation crimes, which the Sentencing Commission believed were too severe, and added some new enhancements for post-deportation crimes, which were not addressed by the existing guidelines. The commentary explains that the amendment was based on a detailed study of immigration offenses and the related guidelines, extensive data collection, analysis, and public comment regarding immigration offenses and immigration offenders, and comments from judges in border districts. And the Commission explicitly said that the commentary explains that the new enhancements more appropriately provide for incremental punishment to reflect varying levels of culpability and risk of recidivism reflected in illegal reentry defendants' prior convictions. And to address Your Honor's specific point, an illegal reentry defendant who comes to this country illegally, commits a crime, and then is deported presents one level of aggravated offense in terms of having been convicted of a crime and then deported. But when that same person comes back, notwithstanding having been deported, and then commits more crimes, that is a separate offense characteristic that the Sentencing Commission determined and rationally does warrant additional offense-level punishment. And that's a distinct concern from the recidivism concern that would exist for any defendant who commits multiple crimes. I understand your point, but just to complete the thought, and then I'll let you talk to the other judges, but two people are here in the United States that committed precisely the same crime, and one of them is punished more harshly because they reentered illegally. And so you say there's a rational basis for that because... And then comes back again illegally and commits another crime. I think the offense level, the offense conduct is different even though the offense of conviction may be the same. The offense conduct is distinct, and of course that's what specific offense characteristics get at. It distinguishes the offense conduct and enhances or reduces the offense level based on various aggravating and mitigating factors. And I would submit, and the Sentencing Commission has rationally concluded, that those two defendants, though they violate the same statute provision, they've committed different aggravated nature of an offense. Now, with respect to the Hampton v. Malsung issue and whether or not Adelike applied standard of review, I would just simply emphasize right up front that in light of the prior precedent rule, this panel really shouldn't be really considering whether or not Adelike got the standard of review right. Clearly, the Adelike panel applied the rational basis standard of review, and under the panel precedent rule, that is the law of this circuit. But if this court were considering that, it should conclude that Adelike got it right. Osorto's arguments are based, as she and Your Honors have discussed some this morning, I'm sorry, Ms. Bailey and Your Honors have discussed somewhat this morning. She bases that argument on several Supreme Court cases that address equal protection claims but didn't involve the Sentencing Commission or the sentencing guidelines. He also bases the argument on the fact that the Sentencing Commission has no general authority over immigration and naturalization matters. The fact that the illegal re-entry statute prescribes enhanced penalties only for pre-deportation convictions. And the fact that Section 994D prohibited the Commission from considering a number of factors, including an offender's national origin, in adopting the guidelines. Counsel, this is Robin Rosenbaum. I'm sorry to interrupt, but I'd like to go back to the rational basis. In your brief, it seemed like maybe you were arguing it was deterrent. And for the pre-conviction, the pre-reentry ones, I can see that. For the post-reentry ones, I can't really see that because in some cases that may certainly be true, that it would deter somebody after they've re-entered from committing another crime. But in other cases, you know, if they had come to the United States without the intention to commit a crime once they were here, and circumstances caused them to do so, it would not deter them in any way from coming illegally into the United States. So I don't see how that particular rationale can justify the post-reentry. I'm sorry, were you finished, Ronna? Yeah, I don't see how that can justify the post-reentry convictions in the same way it can justify the pre-reentry convictions. Right, I understand. And I think that the enhancements that we're talking about here really only apply relative to the first deportation. So when someone comes back after having committed a crime and then having been deported, and then commits another crime, I don't think that the additional deterrence is directed at the first illegal re-entry. I think it's directed at the next illegal re-entry because I think it's not a... Right, and that's exactly why I think it's problematic, right? Because let's say the person is deported, so they've already re-entered once illegally. They're deported, they come back, and they re-enter again. Now, maybe they are re-entering for the purpose of committing a crime, in which case the deterrent rationale may work. But if they're re-entering a second time illegally, just, you know, maybe they want to be with family or something, and they have no intention to commit a crime, but for whatever reason they happen to commit a crime once they are here, I do not see how imposing post-re-entry conviction enhancement would deter that person from re-entering. Do you understand what I'm saying? That rationale doesn't work to me. That's not to say that I can't think of a rationale that would work, but I don't understand how that rationale works here. Maybe you can explain that to me, or if not, maybe you can explain if you think there's some other rationale that justifies this. Well, I think that that's certainly the rationale that the Sentencing Commission pursued in Amendment 802, and I'm not sure what rationale Your Honor is referring to, but given the burden... I don't see that that's the rationale that the Sentencing Commission pursued in 802. Now, I grant you that Adeliki said that that was the rationale behind the pre-re-entry conviction enhancement, and that makes sense because that is consistent with the statute, right, 8 U.S.C. 1326, and why there were enhancements created in the penalties for people who had previously committed crimes before they re-entered again. So that makes perfect sense, but I don't see how that rationale can drive the post-re-entry conviction enhancement. If you look at the rationale for both of these enhancements that are specified in 802, nowhere do I see deterrence listed. I may have missed it. I mean, that's certainly possible, but I don't see that. Even the section that you were reading doesn't talk about deterrence. I think that gets back to what I was alluding to before, Your Honor, in that it isn't simply a question of deterrence. It's a question of reflecting the seriousness of the offense itself, and it certainly is rational to... the commission depended on in their statement of reasons. Is that what you're saying? Yes, and I think there's a... Well, I'm not sure that it was necessary. Well, yeah, I mean, I think a fair reading of the statement of reasons in Amendment 802 is that a defendant who sustains convictions both before and after the deportation warrants a separate sentence enhancement. And sort of fleshing out that concept, I think it's because there is an inherent difference between someone who only commits a pre-deportation conviction in terms of offense conduct and someone who also commits a post-conviction crime. And, again, it's really accurately describing the offense conduct, which, of course, as I said before, is what the specific offense characteristics are intended to reflect, which is a distinct concept from recidivism. At heart, your argument is there's something worse about a person who commits a legal reentry... There's something worse about the crime of a person who commits a legal reentry for a second, third, whatever time, but doesn't do any further crimes once they're here. I'm sorry, there's something worse about someone who does do further crimes once they come back and commit the reentry crime a second, third, whatever time than there is about somebody who just comes back illegally but doesn't engage in further crimes. That's what your argument is, right? Yes, in terms of the offense conduct, yes. Your argument has expired. Thank you, Your Honor. So if the court has no further questions, I'll submit. I do have one to follow up on Judge Rosenbaum. So your position is there are two justifications for enhancing the punishment. One is to deter the second illegal reentry because we've already deported the alien once who had previously committed crimes. We want to deter him from coming back illegally. And then if he continues to commit crimes after he has committed the second illegal reentry, the second component is enhancement for his recidivism. As a specific offense characteristic, yes, which is distinct from the criminal history calculation. Correct. And it devolves to the offense itself. The nature of the offense changes with the second conviction. Thank you. Okay. Thank you, Mr. Scholl. Ms. Bailey? Yes, Your Honor. This is Lynn Bailey. I'm going to protect your two minutes here, okay? Thank you so much. Okay. Your Honor, we agree that the government hasn't really, until this morning, advanced any rational basis for the discrimination in the guideline. In their briefing, they really just relied on Adelecki, which somewhat relied on deterrence. But we agree with Judge Rosenbaum that we can't rely on deterrence for several reasons. First of all, Amendment 802 doesn't mention deterrence anywhere for the reasons for having the amendment. And even if you look at the report, Amendment 802 refers to a report in 2015 that was done by the Sentencing Commission about these offenses. And even when you read that report, there's no hint that the goal is deterrence. Amendment 802 does say culpability and risk of recidivism. But those are just punishments. And those are just punishing reasons. And this is why it compounds the extra punishment that is being given to the alien in addition to the criminal history. There is no rational reason why these criminal convictions should count twice. As Judge Rosenbaum was suggesting, when we're talking about the post-reentry conviction, because they happened after the last reentry, it doesn't mean that that person, when they reentered, had any more culpable of a mental state when they did the reentry. They did the reentry, and then something happened, and they ended up committing another crime. That doesn't make it more culpable on the offense conduct scale. And risk of recidivism is already taken into account by Chapter 4. That's what Chapter 4 is entirely designed to address, is punishing recidivists more severely. And even the court in Adelecki recognized that when they were rejecting the double-counting argument. So any rationale based on deterrence is merely hypothetical. And the culpability and risk of recidivism don't provide a rational basis. They're not a legitimate interest, and they certainly do not provide a rational basis. There's no demonstrated connection between the length of time that we imprison these people and the fact that we double-count their criminal histories against them. There's no rational basis or rational connection between that and deterrence, or between that and the severity of the offense conduct, or between that and the risk of recidivism. Your Honor, we submit that the government has not shown any legitimate basis and rational basis for discriminating against aliens in 2L1.2. It violates the Equal Protection Principles. And if this court has no further questions, we would ask the court to follow the framework in Hampton, which lays out a very good way of addressing this issue, given that it's a sentencing commission, not Congress or the President. The one other thing I would point out about Hampton is, there was an interest in administrative convenience that was put forth that the Supreme Court rejected. And part of the reason why they rejected it was because they looked at the procedures used by the Civil Service Commission to come up with the regulations, just the way we're looking at the reasons that the Sentencing Commission used to come up with Amendment 802. And they could not find a reason that survived rational basis scrutiny. So we would ask the court to hold at least the post-2016 Amendment to the Guidelines for post-reentry convictions unconstitutional as violating Equal Protection. And to the extent that we also submit that Adeletti was wrongly decided, we would ask the court to consider en banc. Thank you, Ms. Bailey. Thank you, Your Honors. We've got your case. Thank you.